UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                              Plaintiff

v.                                          Criminal Action No. 3:17-CR-87-RGJ

JEFFREY CAMPBELL                                                     Defendant

* * * * *

**MEMORANDUM OPINION AND ORDER**

Jeffrey Campbell ("Campbell") moves to dismiss [DE 119] Counts 2-5, Counts 10-23, and Count 24 of the Third Superseding Indictment ("Superseding Indictment") [DE 110]. The matter is ripe. [DE 122; DE 124]. For the reasons below, the Court **DENIES** his Motion.

## I.      BACKGROUND

In the Superseding Indictment, the United States charged Campbell with conspiracy to unlawfully distribute controlled substances (Count 1), unlawful distribution of a controlled substance (Counts 2-5), conspiracy to unlawfully distribute a controlled substance resulting in death (Counts 6), unlawful distribution of a controlled substance resulting in death (Counts 7-9), conspiracy to commit health care fraud (Count 10), health care fraud (Counts 11-23), and conspiracy to commit money laundering (Count 24). [DE 110].

Campbell moves to dismiss Counts 2-5 because they are duplicitous, and Counts 10-23 because they fail to state an offense.[1] [DE 119 at 502-503]. The United States responded [DE 122] and Campbell replied [DE 124].

---

[1] Campbell also moves to dismiss Count 24: "Count 24 . . . alleges [Campbell] paid employees through a bonus program with funds derived from the conspiracy to commit health care fraud alleged in Count 10 . . . . The required dismissal of Count 10 invalidates Count 24 for failure to state an offense." [DE 119-1 at 520-521]. As discussed below, the Court will not dismiss Count 10 and for that reason, the Court will also not dismiss Count 24.

1

## II.  DISCUSSION

### A.  Counts 2-5 Are Duplicitous

#### 1.  Each Unlawful Transfer Under 21 U.S.C. 841(a)(1) Is a Distinct Offense

Counts 2-5 of the Superseding Indictment charge Campbell with Unlawful Distribution and Dispensing of Controlled Substances-Schedule II in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(c).  [DE 110 at 431].  In Counts 2-5, the United States alleges that Campbell "knowingly and intentionally distributed and dispensed, and caused to be distributed and dispensed, Schedule II controlled substances to the patients listed below, without a legitimate medical purpose and outside the usual course of professional medical practice" during the following "date ranges":

| COUNTS | DATES | DRUGS(S) | PATIENTS |
|---|---|---|---|
| 2 | December 6, 2012 through April 19, 2014 | Methadone | B.M. |
| 3 | November 14, 2013 through April 22, 2014 | Oxycodone Methadone | C.M. |
| 4 | July 23, 2013 through April 15, 2014 | Oxycodone | B.S. |
| 5 | July 31, 2013 through April 18, 2014 | Methadone | M.S. |

[DE 110 at 431].

Campbell argues that "Counts 2 through 5 charge [him] with unlawfully distributing and dispensing controlled substances.  These counts are entirely duplicitous, as they allege wholly separate and distinct offenses . . . Because separate acts of unlawful distribution of controlled substances are distinct offenses under 21 U.S.C. § 841(a)(1), as opposed to a continuing crime, they must be charged in separate counts."  [DE 119-1 at 513-514].  The United States, on the other hand, contends that the "the law requires that the United States prove a course of prescribing that

2

is without a legitimate medical purpose or outside the normal course of professional practice. Counts 2-5 of the Superseding Indictment each allege a single offense of unlawfully distributing or dispensing a particular controlled substance to a specific patient during a particular time period." [DE 122 at 532-533]. The United States argues that its "requirement . . . in illegal distribution cases against doctors and pharmacists to prove the additional element of prescribing without a legitimate medical purpose or outside the usual course of professional practice – in other words a pattern of prescribing – recognizes the difference between the distribution of legal substances and illegal substances." *Id.* at 531.

"A duplicitous indictment charges separate offenses within a single count." *United States v. Anderson*, 605 F.3d 404, 414 (6th Cir. 2010) (citation and internal quotation marks omitted). "In determining whether there is duplicity . . . [in an indictment] the decisive criteria are legislative intent and separate proof." *United States v. Damrah*, 412 F.3d 618, 622 (6th Cir. 2005) (citation and internal quotations marks omitted).

The Sixth Circuit has neither explicitly nor extensively addressed whether an unlawful transfer under 21 U.S.C. § 841(a) is a "distinct offense" or a "continuing crime."[2] But, circuit

---

[2] In a two-page, *per curiam* opinion, the Sixth Circuit in *United States v. Noel* considered whether Noel's indictment contained multiplicitous counts. 490 F.2d 89, 90 (6th Cir. 1974) ("The principal issue argued before the court concerned whether or not the first two counts of the indictment represented in actuality the commission of only one crime"); *See United States v. Sosa-Baladron*, 800 F. App'x 313, 322 (6th Cir. 2020) ("When an indictment charges a single offense in separate counts, it is multiplicitous and implicates the Double Jeopardy clause"). There, Noel was convicted for violating "21 U.S.C. 841 (1970), and 18 U.S.C. 2 (1970), for aiding and abetting and for serving as a principal in the sale and distribution of heroin." *Id.* The Sixth Circuit held that each count in the indictment represented the commission of a different crime because the "sale arranged with . . . Noel pertained to two 'spoons' of heroin for two separate individuals . . . We regard these facts as being such as to require differing substantive proofs as to the two offenses, and that as a consequence, convictions on the two counts were valid." *Id.* Although *Noel* guides this Court, it addresses multiplicity, not duplicity, and in the last forty-six years has only been cited twelve times. Nonetheless, it supports the Court's finding that each unlawful transfer under § 841(a) is a "distinct offense."

3

courts "resolving this issue have uniformly held that separate unlawful transfers of controlled substances are separate crimes under § 841, even when these transfers are part of a continuous course of conduct." *United States v. Mancuso*, 718 F.3d 780, 793 (9th Cir. 2013) (quoting *United States v. Lartey,* 716 F.2d 955, 967 (2d Cir.1983)) (internal quotation marks omitted); *See United States v. Thompson*, 624 F.2d 740, 743 (5th Cir. 1980) ("[§ 841(a)] . . . is reasonably interpreted as making each unlawful dispensation a distinct offense.  In this case, the appellant wrote three separate prescriptions on each of the two dates, by which he caused six separate dispensations of a controlled substance"); *Lartey*, 716 F.2d at 967 ("The plain language of [§ 841] indicates . . . that illegal distribution under § 841 is not a continuing crime.  The law instead makes each unlawful transfer a distinct offense"); *United States v. Elliott*, 849 F.2d 886, 890 (4th Cir. 1988) ("We therefore conclude that each distinct act of delivery is a separate unit of prosecution under § 841(a)(1), even if it is only one of several such deliveries made in the course of an overall sales transaction"); *Mancuso*, 718 F.3d at 793 (finding Count II of indictment duplicitous because "separate acts of distribution of controlled substances are distinct offenses under 21 U.S.C. § 841(a), as opposed to a continuing crime, and therefore must be charged in separate counts"); *United States v. Rowe*, 919 F.3d 752, 759 (3d Cir. 2019) (finding that "separate acts of distribution of controlled substances are distinct offenses under 21 U.S.C. § 841(a), as opposed to a continuing crime") (quoting *Id.*).

In *United States v. Elliott*, the Fourth Circuit examined the legislative intent behind § 841(a):

> Section 841(a)(1) was enacted as part of the Comprehensive Drug Abuse Prevention and Control Act of 1970.  One of the principal purposes of that Act was to strengthen the penalties for drug trafficking, in order to deter individuals from engaging in that activity . . . Section 841(a)(1) helped accomplish this goal by making illegal not only the actual sale of controlled substances, as had its predecessor, but also the participation in any aspect of the chain of their

4

distribution-from manufacture to delivery . . .  For this reason, several courts have concluded that Congress intended each distinct act of delivery to be a separately punishable offense under § 841(a)(1), even though it may have been only one of several such deliveries made in the course of consummating a single sales transaction . . .

. . .

We agree that a purely transactional interpretation of the term 'distribution' would be inconsistent with Congress' intent to expand the scope of the conduct punishable under § 841(a)(1) beyond the actual act of sale. Under such an approach, drug traffickers could avoid separate punishments for multiple deliveries to the same buyer over an extended period of time simply by characterizing them as separate installments of a single sales transaction.  Had Congress intended such a result, it would simply have proscribed-chosen as the unit of prosecution-the 'sale' of drugs, rather than their 'delivery' and 'transfer.' We therefore conclude that each distinct act of delivery is a separate unit of prosecution under § 841(a)(1), even if it is only one of several such deliveries made in the course of an overall sales transaction.

*Elliott*, 849 F.2d at 889–90.

Consistent with the Fourth Circuit's interpretation of Congress' intent and the persuasive precedent of the Second, Third, Fourth, Fifth, and Ninth Circuits, the Court finds that Counts 2-5 are duplicitous.

> 2. *A Specific Unanimity Instruction and a Bill of Particulars Cure Any Prejudice.*

Campbell claims that he will be prejudiced because "[if] each juror were to find that Defendant Campbell committed one of the offenses in each count, but there was no agreement as to which offense he committed, a conviction would violate Defendant's Sixth Amendment right to a unanimous verdict."  [DE 119-1 at 514].  Campbell's concern is valid, but it is best allayed through a specific unanimity instruction, not dismissal.  *See United States v. Hendrickson*, 822 F.3d 812, 822 (6th Cir. 2016)  ("Specific unanimity instructions are a method of curing duplicitous charges, which set forth separate and distinct crimes in one count and create a risk that a defendant's right to a unanimous verdict would be undermined if individual jurors find [him] guilty of different crimes")  (citation, internal quotation marks, and formatting omitted);  *United States v. Adesida*,

5

129 F.3d 846, 849 (6th Cir. 1997) ("[T]he court can cure the error of duplicity by instructing the jury that it must come to a unanimous verdict in regard to either one offense or the other"); *United States v. Blandford*, 33 F.3d 685, 699 (6th Cir. 1994) (finding no prejudice from duplicitious count because district court provided specific unanimity instruction); *United States v. Cherif,* 943 F.2d 692, 701 (7th Cir.1991) ("The problem Cherif complains about—the possibility that the jury would convict him even though it did not unanimously agree on what false statement he made— could easily have been cured by an instruction telling the jury that it could convict Cherif on the false statement count only if it unanimously agreed on the false statement he made.").  Here, without a specific unanimity instruction, there is a genuine risk that "the jury [may be] confused or that a conviction may occur as the result of different jurors concluding that a defendant committed different acts." *United States v. Duncan*, 850 F.2d 1104, 1114 (6th Cir. 1988).

Campbell also argues that "given the vagueness of the accusations, [he] would be prejudiced in a subsequent double jeopardy defense.  Defendant would be unable to plead an acquittal or conviction in a future prosecution based on a non-duplicitous indictment for a charged offense that fell within the time period prescribed by the Government in this case." [DE 119-1 at 515-516].  To assuage this concern, the Court orders the United States to file a bill of particulars. *See* Fed. R. Crim. P. 7(f) ("The court may direct the government to file a bill of particulars").  In the bill of particulars, the United States is to identify for each prescription written by Campbell: 1) the date it was written; 2) the serial number; 3) who it was written for; and 4) what it was for. *See United States v. Seelig*, 622 F.2d 207, 211 (6th Cir. 1980) ("The prescriptions are identified by date, serial number, and issuing doctor.  The counts . . .  allege these distributions . . . [violated] . . . 21 U.S.C. s 841(a)(1).  Surely, enough facts are alleged to enable appellants to plead acquittal or conviction in bar of future prosecutions for the same offense since the precise acts which

constitute the offense have been alleged").

**B. Counts 10-23 Sufficiently State the Charged Offenses**

A defendant may move the court to dismiss an indictment because it fails to state an offense. Federal R. Crim. P. 12(b)(3)(B)(v). An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7 (c)(1). An indictment sufficiently states an offense under Rule 12(b)(3)(B)(v) "if it alleges conduct satisfying every element of the charged offense." *United States v. Maddux*, 917 F.3d 437, 443 (6th Cir. 2019) (citing *United States v. Olive*, 804 F.3d 747, 753 (6th Cir. 2015)). In this regard, "the indictment must: (1) set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces, and (2) be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007) (citation, internal quotation marks, and formatting omitted).

The "indictment must be read as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications." *Id.* (citing *United States v. Reed*, 77 F.3d 139, 140 n.1 (6th Cir. 1996) (*en banc*)). "An indictment is to be construed liberally in favor of its sufficiency." *Id.* (citing *United States v. Davis*, 306 F.3d 398, 411 (6th Cir. 2002)). Indeed, "a defendant wishing to challenge an indictment valid on its face bears a heavy burden." *United States v. Woodman,* 229 F.3d 1155, No. 98–4527, 2000 WL 1234328, at *5 (6th Cir. Aug. 21, 2000) (unpublished table decision) (citing *United States v. Lamoureux,* 711 F.2d 745, 747 (6th Cir.1983)).

*1. Count 10 sufficiently states the offense of Conspiracy—Health Care Fraud.*

Count 10 of the Superseding Indictment charges Campbell with violating 18 U.S.C. § 1349:

7

COUNT 10
(Conspiracy – Health Care Fraud)

On or about and between January 1, 2009, and continuing through December 1, 2016, in the Western District of Kentucky, Jefferson County, Kentucky, JEFFREY CAMPBELL, MARK DYER, JACQUELINE DAVIS, and PHYSICIANS PRIMARY CARE, PLLC, defendants herein, and others, did knowingly and willfully combine, conspire and confederate and agree with each other and others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to knowingly and willfully execute, and attempt to execute, a scheme and artifice to obtain, by means of false or fraudulent pretenses, representations, and promises, money and property owned by and under the custody or control of health care benefit programs, in connection with the delivery of, and payment for, health care benefits, items, and services, to wit: JEFFREY CAMPBELL, MARK DYER, JACQUELINE DAVIS, and PHYSICIANS PRIMARY CARE, PLLC, and others, *falsely and fraudulently billed various health care benefit programs by coding physical therapy, counseling, and exercise (Med Fit Program) services using evaluation and management codes in order to obtain a higher rate of reimbursement and billed for medically unnecessary tests, such as nerve conduction studies, MRIs, CT Scans, X-rays, Urinary Drug Screens (UDSs), and ANSAR tests.*

[DE 110 at 433-434] (emphasis added).

To convict Campbell under 18 U.S.C. § 1349, the United States must prove: 1) "an agreement between two or more persons to" 2) "knowingly and willfully execute, or attempt to execute, a scheme or artifice to defraud any health care benefit program; or to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services." *United States v. Chaney*, 921 F.3d 572, 593 (6th Cir.) (internal formatting, quotation marks, and citations omitted).

Campbell argues that "the Indictment . . . fails to allege facts or circumstances pertaining to . . . Campbell's participation in a scheme to defraud. The Indictment also fails to include an overview of how the conspiracy operated or [Campbell's] role in furthering those operations." [DE 119-1 at 519]. The United States counters that "the plain text of the Superseding Indictment

8

. . . specifically explains the overall conspiracy and the particular schemes that Campbell himself engaged in, including identifying specific instances of the fraudulent billings that are the subject of the substantive health care fraud counts."  [DE 122 at 539-540].

The Court agrees with the United States.  Count 10, which tracks the statutory language of 18 U.S.C. § 1349, sufficiently states the offense of Conspiracy—Health Care Fraud.  *McAuliffe*, 490 F.3d at 531  (quoting *United States v. Superior Growers Supply, Inc.,* 982 F.2d 173, 176 (6th Cir.1992))  ("'An indictment will usually be sufficient if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense'").  Count 10 states that there was an agreement between Campbell, Mark Dyer, Jaqueline Davis, and Physician Primary Care, PLLC.  [DE 110 at 433-434].  And it sets out in clear language the defendants' "scheme or artifice to defraud" as "falsely . . . fraudulently bill[ing] various health care benefit programs by coding physical therapy, counseling, and exercise (Med Fit Program) services using evaluation and management codes in order to obtain a higher rate of reimbursement and bill[ing] for medically unnecessary tests, such as nerve conduction studies, MRIs, CT Scans, X-rays, Urinary Drug Screens (UDSs), and ANSAR tests." *Id.*;  *See United States v. Walters*, No. 3:15-CR-14-GFVT-REW, 2016 WL 1453069, at *2 (E.D. Ky. Apr. 12, 2016) (finding charge of conspiracy to commit health care fraud sufficient where it "alleg[ed] the purpose of the conspiracy was for . . . Defendants to 'unlawfully enrich themselves by (a) submitting false and fraudulent claims . . . for services that were medically unnecessary and that were not eligible for reimbursement, and (b) diverting proceeds of the fraud for the personal use and benefit of the defendants'").  Although Count 10 is not specific to Campbell (it includes his co-defendants), Campbell's role in the conspiracy is detailed in Counts 11-23, which allege how he committed health care fraud.  *See McAuliffe*, 490 F.3d at 531 ("The indictment must be read as a whole,

accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications")  (internal quotation marks and citation omitted).

> *2. Counts 11-23 sufficiently state the offense of  Health Care Fraud.*

Counts 11-23 charge Campbell with violating 18 U.S.C. § 1347:

COUNTS 11-21
(Health Care Fraud—Fraudulent Coding)

On or about the dates listed below, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, JEFFREY CAMPBELL, defendant herein, aided and abetted by others known and unknown to the Grand Jury, knowingly and willfully executed, and attempted to execute, a scheme and artifice to obtain, by means of false or fraudulent pretenses, representations, and promises, money and property owned by and under the custody or control of health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, to wit: JEFFREY CAMPBELL *falsely and fraudulently billed various health care benefit programs by coding physical therapy, counseling, and exercise (Med Fit Program) services using evaluation and management codes in order to obtain a higher reimbursement rate for the below listed patients*:

| COUNTS | DATES | PATIENTS | SERVICE PERFORMED | E&M BILLING CODE |
|---|---|---|---|---|
| 11 | August 26, 2013 | R.C. | Physical Therapy | 99214 |
| 12 | April 10, 2014 | H.H. | Med Fit (exercise) | 99214 |
| 13 | August 12, 2013 | E.L. | Counseling | 99214 |
| 14 | February 14,  2014 | B.M. | Physical Therapy | 99214 |
| 15 | February 19, 2013 | D.P. | Counseling | 99214 |
| 16 | April 7, 2014 | B.S. | Med Fit (exercise) | 99214 |
| 17 | July 31, 2013 | M.S. | Counseling | 99214 |
| 18 | April 15, 2013 | T.B. | Med Fit (exercise) | 99214 |
| 19 | August 1, 2013 | K.B. | Counseling | 99214 |
| 20 | February 20, 2013 | S.B. | Counseling | 99214 |
| 21 | September 13, 2013 | N.A. | Counseling | 99214 |

10

COUNT 22
(Health Care Fraud-Physical Therapy)

On or about and between April 1, 2013, and March 31, 2014, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, JEFFREY CAMPBELL and MARK DYER, defendants herein, and others, aided and abetted by each other and others known and unknown to the Grand Jury, knowingly and willfully executed, and attempted to execute, a scheme and artifice to obtain, by means of false or fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, to wit: JEFFREY CAMPBELL and MARK DYER, and others, *falsely and fraudulently billed various health care benefit programs for physical therapy services using evaluation and management codes as if a physician performed a service on the patients, but in reality, a non-physician and non-physical therapist performed the service on the patients*.

COUNT 23
(Health Care Fraud—Proove Biosciences)

On or about and between August 6, 2013, and June 1, 2014, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, JEFFREY CAMPBELL and PHYSICIANS PRIMARY CARE, PLLC, defendants herein, aided and abetted by each other and others known and unknown to the Grand Jury, knowingly and willfully executed, and attempted to execute, a scheme and artifice to obtain, by means of false or fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, to wit: JEFFREY CAMPBELL and PHYSICIANS PRIMARY CARE, PLLC, and others, caused Proove Biosciences, Inc., a genetic lab company, to *falsely and fraudulently bill various health care benefit programs for genetic tests administered to Physicians Primary Care patients that were not medically necessary and never interpreted*.

[DE 110 at 434-436] (emphasis added).

To obtain a conviction for health care fraud under 18 U.S.C. § 1347, the United States must prove that Campbell: "(1) knowingly devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) executed or attempted to execute this scheme or artifice to defraud; and (3) acted with intent to defraud." *United States v. Hunt*, 521 F.3d 636, 645 (6th Cir. 2008) (internal quotation marks and

citations omitted).

Campbell contends that "Counts 11 through 21 accuse . . . [him] of falsely and fraudulently billing various health care benefit programs by coding physical therapy, counseling and exercise (Med Fit Program) services using evaluation and management codes in order to obtain a higher reimbursement rate for the listed patients.  It is unclear if the basis of the charge is the use of the evaluation and management codes or the level of the service billed in order to obtain a higher reimbursement rate."  [DE 119-1 at 520].  He also argues that "[n]o specific fraudulent acts are identified in the Indictment related to Counts 22 and 23.  These counts are vague as to the scheme or artifice to defraud a health care benefit program and fail to discern specific executions or attempts to execute, with the intent to defraud, such scheme or artifice."  *Id.*

The United States argues that "Counts 11-21 contain the elements of health care fraud and specifically describe how Campbell fraudulently billed health care benefit companies by using evaluation and management codes to inappropriately bill for physical therapy services, counseling, and fitness programs. In fact, the Superseding Indictment identifies eleven specific instances of this fraud."  [DE 122 at 540].  The United States also argues that "Count 22 accurately sets forth the elements of health care fraud and then specifically identifies the health care fraud scheme where Campbell and his co-defendant fraudulently billed health care benefit programs by billing physical therapy services using evaluation and management codes as if a physician performed them when in fact a non-physician and nonphysical therapist performed the services."  *Id.* at 541. And  the United States asserts that "Count 23 accurately sets forth the elements of health care fraud and then specifically identifies the health care fraud scheme where Campbell ordered unnecessary genetic tests, never interpreted or used those tests, and then caused the lab company to falsely and fraudulently bill health care benefit companies for those tests."  *Id.* at 542.

The Court agrees with the United States: Counts 11-21 are sufficient. Counts 11-21 allege: 1) the scheme's time frame (February 2013 to April 2014); 2) the scheme's victims ("health care benefit programs"); 3) the scheme's perpetrator (Campbell); 4) the scheme's purpose ("to obtain a higher reimbursement rate"); and 5) the scheme ("falsely and fraudulently coding physical therapy, counseling, and exercise (Med Fit Program) services using evaluation and management codes"). [DE 110 at 434-435]. In addition, Counts 11-21 track the language of the statute and thereby set out the essential elements of the offense.

The Court also finds that Count 22 and 23, both of which track the statutory language, are sufficient. Count 22 alleges: 1) the scheme's time frame (April 1, 2013 to March 31, 2014); 2) the scheme's victims ("health care benefit programs"); 3) the scheme's perpetrators (Campbell and Mark Dyer); and 4) the scheme ("falsely and fraudulently billing for physical therapy services using evaluation and management codes as if a physician performed a service on the patients, but in reality, a non-physician and non-physical therapist performed the service on the patient"). *Id.* at 435-436. And Count 23 alleges: 1) the scheme's time frame (August 6, 2013, and June 1, 2014); 2) the scheme's victims ("health care benefit programs"); 3) the scheme's perpetrators (Campbell and Physicians Primary Care, PLLC); and 4) the scheme ("caused Proove Biosciences, Inc., a genetic lab company, to falsely and fraudulently bill various health care benefit programs for genetic tests administered to Physicians Primary Care patients that were not medically necessary and never interpreted"). *Id.* at 436; *See United States v. Chalhoub*, No. 16-CR-23, 2018 WL 9802145, at *2 (E.D. Ky. Feb. 16, 2018) (finding health care fraud charge sufficient where it alleged that from "March 2007 through July 13, 2011, Chalhoub implanted . . . pacemakers in patients without sufficient medical need or justification and caused claims for medically

unnecessary procedures and services to be submitted to healthcare benefit programs") (internal quotation marks omitted.

### III.     CONCLUSION

Accordingly, for the reasons stated, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that:

(1) Campbell's Motion  [DE 119] is **DENIED**.

(2) The United States is to file a bill of particulars which—for each of Campbell's prescriptions at issue—identifies: (1) the date it was written; (2) the serial number; (3) who it was written for; and (4) what it was for.

Cc:     Counsel of record

14